IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ROBERT DARRELL BURELL JR. | § | |
| v. | § | CIVIL ACTION NO. 6:19cv258 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Petitioner Robert Burell, a prisoner of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this petition for the writ of habeas corpus under 28 U.S.C. §2254 complaining of the legality of his conviction. The petition has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Background**

Burell pleaded guilty to and was convicted of two counts of aggravated assault of a correctional officer on October 26, 2015, receiving sentences of 30 years in prison. These sentences were concurrent to each other, but consecutive to the aggravated robbery conviction he was already serving.

Burell did not take a direct appeal, but has filed five state habeas corpus petitions concerning this conviction.[1] He voluntarily dismissed the first of these, and his second and third were dismissed as non-compliant. Burell voluntarily dismissed his fourth state habeas, and filed his fifth state

---

[1] Burell has filed a total of six habeas petitions in the Texas Court of Criminal Appeals. The first of these challenged a prior conviction for aggravated robbery not at issue here. That petition was numbered WR-60,418-01. His next five state habeas petitions, all challenging the convictions at issue here, are numbered WR-60,418-02 through -06.

habeas petition on February 28, 2019.[2] This petition was dismissed without written order on May 15, 2019. Burell's federal habeas petition is dated May 31, 2019.

In his federal petition, Burell asserts that under the erroneous advice of counsel, he pleaded guilty to an uncharged offense. He states that he pleaded guilty to aggravated assault in Count II, but this count charged him with attempted aggravated assault, not aggravated assault. Burell further says that on January 22, 2018, a state habeas court found that he had erroneously pleaded to an uncharged offense; he contends that "judicial estoppel" prevents the State or this Court from entering a contrary legal finding. Because he pleaded guilty to an uncharged offense in Count II, Burell says that the 30 year sentence he received was illegal. He argues that "said judgment is invalid and deprives convicting court, the State prosecutors, and the Texas prison system of lawful jurisdiction and lacks authority to detain, imprison Petitioner and his plea proceeding, plea bargain with State is fundamentally lacking in legality to enter into said 'agreed recommendation' and enforce a judgment and prison sentence void of a valid charge, courts of the State of Texas and the Texas prison system lacking in lawful authority and jurisdiction based on said unconstitutional and illegal procedures that all constitute a fundamental miscarriage of justice."

Next, Burell states that his pleas to Counts I and II were unlawful because they were based on an "unavailable non-prior conviction." He explains that he pleaded "true" on the advice of counsel to a prior conviction for aggravated robbery, for which the finality date was given as February 21, 2003; however, this conviction did not become final until his petition for discretionary review was refused on May 5, 2004, and the mandate issued in late 2004. Thus, Burell maintains that he is "innocent of being a habitual offender."

Third, Burell contends that his guilty pleas were not knowing, intelligent, or voluntary because counsel rendered ineffective assistance. He says that counsel erroneously advised him to

---

[2]As discussed below, Burell maintains that he did not file the motions to dismiss his first and fourth state habeas petitions, but that these motions were maliciously filed by another inmate.

accept the plea offer despite the improper enhancement and the uncharged offense, rendering his pleas void.

Burell asks that the Court find "statutory government-created impediments" on all of his grounds to excuse the late filing of his petition. He states that he did not discover a factual predicate of his claims, pointing to a December 2017 report from the State Bar of Texas concerning the State Counsel for Offenders program. He also says that his claims of actual innocence of the uncharged offense and the habitual offender charge are sufficient to defeat the statute of limitations.

Finally, Burell asserts that he was prosecuted under a state indigent defense program which "replete with structural conflicting interests," as allegedly shown by the State Bar report, including lack of independence and multiple discriminatory disparities favoring special prosecutors, including higher salaries for prosecutors than defense counsel. He says that prison inmates charged with crimes are appointed attorneys from State Counsel for Offenders, but the conflicting interests and disparities are such as to amount to the constructive denial of counsel, which violates equal protection in comparison to wealthy inmates who can afford to retain defense counsel.

Burell states that State Counsel for Offenders does not have independent budget authority but falls under the budget of the Texas Department of Criminal Justice. By contrast, the Special Prosecution Unit is an independent unit governed by a board of directors of each prosecuting attorney from a county in which a prison facility is located. It is listed in the General Appropriations Act and has a specific line item under the Texas Comptroller's Judiciary Section Budget. He contends that the state budget favors the prosecutor unit over State Counsel for Offenders, which is disparate treatment denying equal protection of the law. Burell contends that this disparate treatment has no legitimate governmental or penological purpose but to provide inferior defense attorney services and to "insure wrongful convictions."

Burell further contends that prison facilities for conducting interviews between inmates and their attorneys are done within listening distance of guards or other inmates, thus compromising attorney-client confidentiality. He says that State Counsel for Offenders' expert assistance, travel

3

expenses, secretarial and paralegal resources, and support staff are all discriminatory and denied him counsel. His own attorney, Nicholas Mensch, told Burell that he, Mensch, was unqualified to handle criminal work, and Mensch resigned from State Counsel for Offenders on November 23, 2015. Mensch told Burell he saw no affirmative defenses to raise, which Burell claims was error because the incident forming the basis of his convictions "stemmed from the inhumane and unconstitutional prison conditions existing at said prison unit." Thus, he claims that he had affirmative defenses of duress and necessity, but Mensch "was not obligated to raise them as a result of said structural, institutional conflicting interests inherent in said indigent inmate defense scheme, complained of herein."

## II. The Respondent's Answer

The Respondent argues that Burell's petition is barred by the statute of limitations, contending that Burell's claims do not implicate the actual innocence exception to the statute of limitations and his invocation of "exceptional circumstances" lacks the support necessary to give the Court the power to grant him additional time to satisfy the limitations period. With regard to the claim concerning the State Bar report on State Counsel for Offenders, the Respondent says that the salary data of state employees is public record and could have been acquired through a public information request by someone acting with due diligence, but in any event, if December 8, 2017, is accepted as the factual predicate date, the petition would still be barred by limitations.

## III. Burell's Reply to the Answer

In his reply, Burell again maintains that equitable tolling should be granted in order to prevent a fundamental miscarriage of justice of one "who may be innocent," pointing to his guilty plea to an uncharged offense and the enhancement provisions. He contends that he has been pursuing his rights diligently and that he has presented all of his claims to the state courts, thus exhausting his state remedies.

Burell asserts that the finality date of February 21, 2003, given in the enhancement portion of his present indictment for his prior conviction is "materially false" and cannot support

enhancement of any sort, rendering his sentences illegal. He says that on January 22, 2018, state habeas judge Mark Calhoun entered specific factual findings that Burell erroneously pleaded to and was found guilty of an uncharged offense as to Count II. This finding was based on an affidavit by Mensch admitting the error. Burell contends that he is thus factually innocent of the uncharged offense in Count II as well as innocent of being a habitual felony offender in Counts I and I.

Burell again points to the report from the State Bar of Texas concerning the State Counsel for Offenders program, saying this report shows that the executive and legislative branches conspired with the Texas Board of Criminal Justice and TDCJ to enact state statutes, rules, and unwritten policies designed to provide inferior legal services to inmates. He characterizes this state action in violation of the Constitution or laws of the United States which prevented him from receiving a fair trial and from meaningful access to court. He likens his case to *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) concerning the existence of structural error in the right to counsel and the integrity of the criminal justice system. Burell states that there was "ongoing hostility" and a breakdown of the attorney-client relationship between himself and defense attorneys Barbara Law and Nicholas Mensch, including their refusal to raise inhumane prison conditions as a legitimate defense, their failure to raise evidence of innocence, and permitting him to plead to an uncharged offense. According to Burell, all these qualify as "attorney abandonment by conflicted interests," converting the right to counsel into a "farce." He states that the attorney conflict of interest exception qualifies as "egregious attorney abandonment."

Next, Burell asserts that he learned of the State Bar report in January of 2019, alleging that the report was "kept concealed in some unknown manner" by state agencies, including the Attorney General. He cites *Starnes v. Andrews*, 524 F.3d 612 (5th Cir. 2013), as saying that even though a habeas petitioner's trial records were publicly accessible records, limitations did not start until the petitioner's attorney read the document forming the factual basis of the claims. Although the Attorney General says that salary information of state employees is available through the filing of

a public information request, Burell contends that prisoners are prohibited by state law from filing such requests.

Burell states that according to a December 2017 article in Texas Observer magazine, the State Bar report at one point looked like it would never see the light of day because of an internal rule at the State Bar prohibiting the organization from auditing state agencies. Some lawyers involved with the report filed public record requests the previous year seeking to force its disclosure, but the organization fought to withhold the draft and the Attorney General's office agreed. Burell argues that these attempts to withhold the report "may amount to unethical conduct" and possible fraud upon the Court which requires further exploration and clarification.

With regard to his previous writ history, Burell argues that the two "motions to dismiss" in his state habeas petitions were maliciously filed by an inmate named Arturo Solis, who apparently had been handling Burell's case until the two disagreed. He says that his second writ petition was not dismissed as non-compliant but was remanded for factual findings, and the Court of Criminal Appeals failed to notify him of the denial of his fifth petition until he inquired as to its status and was notified in December of 2018 or January of 2019.

## IV. The Respondent's Sur-Response

The Court ordered the Respondent to reply to Burell's argument concerning actual innocence. In this order, the Court observed that Burell was charged in a three-count indictment with aggravated assault on a correctional officer, attempted aggravated assault on a correctional officer, and assault on a correctional officer. However, the agreed plea recommendation states that Burell is pleading to two counts of aggravated assault on a public servant, with the third count to be dismissed. The trial court's judgments for both Count I and Count II recite that Burell was convicted of aggravated assault on a public servant.

In Burell's third state habeas petition, the Court of Criminal Appeals remanded his claims to the trial court for findings of fact and conclusions of law, including why the indictment charged him with attempted aggravated assault in Count II but he pleaded guilty to aggravated assault.

Defense counsel Nicholas Mensch apparently gave an affidavit stating that an error was made which he did not catch, and the trial court apparently found as a fact that Burell erroneously pleaded guilty to and was found guilty of an incorrect charge. The Court's order noted that neither Mensch's affidavit nor the trial court's findings are included in the state court records; Burell himself furnished a copy of Mensch's affidavit, and he attached the trial court's findings to which he referred as part of his fifth state habeas petition.

In his sur-reply, the Respondent argued that Burell's voluntary guilty plea negates his declaration of innocence and he provides no new reliable evidence which would establish his innocence by a preponderance of the evidence. The Respondent noted that tenable actual innocence claims are rare and states that Burell offers nothing beyond the incongruity in his indictment to show that his plea was involuntary.

The Respondent further asserted that "many courts have been unwilling to allow prisoners to invoke actual innocence claims after pleading guilty," noting that one case from the Northern District of Texas rejected an actual innocence claim based upon a defect in the indictment.

The Respondent noted Mensch's affidavit as stating that the indictment described one count of aggravated assault on a public servant and one count of attempted aggravated assault on a public servant, but Mensch, Burell, and the prosecutor all believed that Burell was charged with two counts of aggravated assault on a public servant. However, the Respondent maintains that with regard to a claim of factual innocence Mensch's affidavit supports Burell's guilt rather than his innocence. The affidavit states that investigators had interviewed Burell multiple times and he admitted committing the offenses to them as well as to Mensch. Inmate witnesses confirmed that Burell had committed the assaults, and the State's discovery file included witness statements from the officers involved as well as photos of the officer's injuries and a use of force video.

Thus, the Respondent concludes that Burell has no new, reliable, or even exculpatory evidence showing that he is factually innocent, stating that a defective indictment is not sufficient to show actual innocence.

With regard to an inquiry by the Court as to whether a claim of actual innocence on one ground of relief - the conviction on Count II - can overcome the statute of limitations on an unrelated ground for relief, the Respondent asserted that the answer is no, the petitioner must show a probable relationship between the alleged constitutional error and his actual innocence. Thus, the Respondent maintains that Burell must show a probable causal connection between his constitutional claims and his actual innocence claim in order to invoke the *McQuiggin* exception; however, Burell provides no such causality between his supposed "actual innocence" and his claims that his attorney was underpaid or his allegation concerning the enhancement of his sentence. In any event, the Respondent asserts that Burell has fallen well short of showing actual innocence.

## V. Burell's Sur-reply

In his sur-reply, Burell contends that he is "actually innocent" of the charge of aggravated assault of a public servant in Count II because he was never charged with that offense. He states that his claims of the structural conflict of interest within the State Counsel for Offenders program and imposition of an illegal enhanced conviction which was not final as alleged are more than sufficient grounds for equitable tolling of the statute of limitations. He further says that the Respondent's arguments violate the doctrine of judicial estoppel prohibiting the State from raising factual or legal positions previously decided against the government.

Burell offers what he calls "new, reliable evidence" in the form of his own affidavit, which he says show the affirmative defenses of justification, duress, necessity, and self-defense, in response to the inhumane, oppressive, and dangerous prison living conditions to which he was subjected. He states that he was a former member of the violent Aryan Brotherhood prison gang but turned government witness against the gang, assisting federal prosecutors in Burell again points to convicting two federal correctional officers.

Burell again refers to the fact-finding by Judge Calhoun and says that the federal court is bound by these findings of fact. He asserts that the Office of the Texas Attorney General is responsible for "government-created delay, misrepresentations, and attempts at fraud on this court

by using *ultra vires* acts to deprive Burell of access to the Great Writ," referring to the alleged suppression of the State Bar report.

Next, Burell argues that the "fundamental miscarriage of justice actual innocence exception" applies to his guilty plea proceeding and the case presents new, reliable evidence of actual innocence in that he was not charged with aggravated assault in Count II but only attempted aggravated assault. Thus, he says that the state court records support his allegation that his plea was involuntary. He argues that failure to consider his claims will result in a fundamental miscarriage of justice.

Burell contends that he raised his affirmative defenses with Mensch prior to trial, but Mensch dismissed them without investigation because he did not want to "rock the boat" with his boss, the Texas Board of Criminal Justice. He states that since he turned against the Aryan Brotherhood, he has been under the constant threat of death, and when he was sent to the Powledge Unit, he was placed in segregation surrounded by Aryan Brotherhood members. He insists that his affirmative defenses were viable under Texas law and that pleading guilty to an uncharged crime, receiving illegal sentences, and misconduct by Mensch permeated with "structural conflicts of interest" all qualify as sufficient grounds to defeat the statute of limitations.

**VI. Records and Exhibits**

Burell has furnished a copy of the state habeas court's findings and conclusions in his third habeas petition, dated January 22, 2018, which concluded that trial counsel's performance was not deficient but that "applicant pleaded guilty and was found guilty of an uncharged offense as to Count 2." (Docket no. 25, p. 2). The records of this habeas petition show that on April 5, 2017, the Texas Court of Criminal Appeals remanded the case to the trial court for findings of fact and conclusions of law. However, on April 24, 2017, Burell filed a supplemental writ application in the district court which was not on the prescribed form as required by Rule 73.1 of the Texas Rules of Appellate Procedure. This rendered the entire application non-compliant, and on March 7, 2018, the habeas petition was dismissed as non-compliant. As a result, the trial court's findings were never adopted or ruled upon by the Court of Criminal Appeals.

The State Bar report referenced by Burell appears in the state court records, docket no. 9-34, pp. 33ff. The report was largely based on an online survey of current (19 percent of respondents) and former (64 percent of respondents) employees of State Counsel for Offenders, as well as responses from defense counsel familiar with the work of State Counsel for Offenders.

The survey results reflected concern with the independence of State Counsel for Offenders in light of the fact that its budget is controlled by TDCJ and management was perceived to have implemented policies more favorable to the agency than to the clients. A majority of respondents to the survey also disagreed with the statement that the policies and office rules did not hamper zealous representation of clients, disagreed that lawyers with Staff Counsel for Offenders had sufficient independent discretion to adequately represent their clients, disagreed that Staff Counsel for Offenders had appropriate policies and the ability to request assistance from the private bar, believed that Staff Counsel for Offenders lawyers were not provided with sufficient time and confidential space to meet with clients, disagreed that caseloads are controlled to ensure that attorneys have adequate time to provide quality representation to clients, disagreed that the ability, training, and experience of the attorneys matched the complexity of the cases to which they were assigned, disagreed that attorneys for Staff Counsel for Inmates were paid equally to their prosecutor counterparts and were treated as equal partners, disagreed that Staff Counsel for Inmates had adequate resources for experts and ancillary services, disagreed that Staff Counsel for Inmates was adequately funded, and disagreed that attorneys and staff receive adequate supervision.

Mensch's affidavit (docket no. 25, p. 3) states in pertinent part that he told Burell after reviewing the file, he did not see any potential affirmative defenses such as self-defense or necessity which could be used to negate guilt. He stated that he told Burell the focus should be on the mitigation aspect of the case because he thought there was a real likelihood that Burell would get life imprisonment from a jury.  Mensch stated that he did not see anything in the file indicating that he told Burell that the State would attempt to cumulate all of the charges one after another. He acknowledged advising Burell to plead guilty, noting that Burell had admitted to the offenses to

Mensch and to the investigators. Mensch said that his investigators were trying to contact individuals to confirm Burell's claim that he had assisted the Department of Justice, but at the time of the plea bargain, most of the contacts whom Burell had provided were refusing to speak with the investigators.

Had Burell refused the State's plea offer, Mensch said that the case would have been set for trial in a few months, at which time the mitigation investigation would have been completed. He stated that Burell told him he would be amenable to a plea deal for around 20 to 25 years. The State's original offer was for 35 years, but a few days before the plea bargain, the State offered 30 years. Mensch added that Burell asked him to seek a 25 year deal, but this was rejected, and he ultimately agreed to the 30 year offer.

With regard to the discrepancy in the indictment, Mensch said that the judgments and plea dockets show that Burell pleaded guilty to two counts of aggravated assault on a public servant, but the indictment shows that he was charged with one count of aggravated assault on a public servant, one count of attempted aggravated assault on a public servant, and one count of assault on a public servant. After reviewing the file, Mensch said "it is clear to me that for some reason both the State and I were under the impression that Mr. Burell was charged with aggravated assault on a public servant in Counts I and II." He acknowledges that he does not remember what he specifically said to Burell when they went over the plea documents, but he says that when he read the offer to Burell, he most likely read the information on the plea offer as it was written and would not have corrected the fact that Count II was for attempted aggravated assault.

## VII. Legal Standards and Analysis

### A. The Statute of Limitations

The statute of limitations, set out in 28 U.S.C. §2244(d), reads as follows:

**(1)**     A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

**(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

**(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

**(C)** the date on which the constitutional right asserted was recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

**(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

**(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

B. Application of the Law on Limitations to the Facts

Burell was convicted on October 26, 2015, and did not take a direct appeal. Consequently, his conviction became final at the expiration of his time to do so. 28 U.S.C. §2244(d)(1)(A); *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003). Texas law provides that in a criminal case, a notice of appeal must be filed within 30 days after sentence is imposed or 90 days after that date if a motion for new trial is filed, which Burell did not do. Tex. R. App. P. 26.2(a). Thus, his conviction became final upon the expiration of his time to appeal, which occurred on Thursday, November 26, 2015. His limitations period began to run at that time and expired one year later, absent the operation of other factors.

1. The State Bar Report

Burell contends that he did not discover the existence of the State Bar report on Staff Counsel for Offenders until December of 2018 or January of 2019, rendering his petition timely (presumably under 28 U.S.C. §2244(d)(1)(D). This contention lacks merit because the State Bar report does not provide any basis for habeas corpus relief. Burell says that the report shows that Staff Counsel for Offenders is "replete with structural conflicting interests" amounting to "constructive denial of counsel," but he does not show how any of these purported deficiencies affected his case. The affidavit from Mensch, which Burell presented as evidence, shows that the

attorney reviewed all of the file materials including video and witness interviews, he had investigators working on the case, and he was confident that the defense would be prepared for trial if Burell rejected the plea offer.

Burell has not shown that Mensch labored under any conflict of interest in representing him. The Fifth Circuit has explained that the mere possibility of a conflict is insufficient to impugn a criminal conviction; instead, the petitioner must show that counsel "labored under an actual conflict which adversely affected his lawyer's performance." *Perillo v. Johnson*, 79 F.3d 441, 447 (5th Cir. 1996). In order to show an adverse effect, the petitioner must demonstrate that some plausible defense strategy or tactic might have been pursued but was not, because of the conflict of interest. *Id*. at 449; *see also Beets v. Scott*, 65 F.3d 1258, 1265 (5th Cir. 1995).

While Burell complains that he wanted counsel to pursue such defenses as self-defense, necessity, or duress, he fails to show these theories were plausible defenses to the charge of aggravated assault of a correctional officer. Mensch's affidavit indicates that he rejected these theories as lacking in merit, not because of a conflict of interest. The fact that Burell may have disagreed with his attorney's legal assessment of his case does not demonstrate a conflict of interest. *See U.S. v. Cronic*, 466 U.S. 648, 658 n.21, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *U.S. v. Wild*, 92 F.3d 304, 307 (5th Cir. 1996).  Because Burell has not shown any conflict of interest on the part of his attorney, nor any harm from the purported conditions recounted in the State Bar report, this claim lacks merit and thus cannot serve to extend the commencement of the limitations period.

Although Burell seeks to liken his case to *Powell v. Alabama*, 287 U.S. 45, that case is plainly not germane. In *Powell*, the defendants were indicted for highly publicized capital offense and six days before trial, the trial judge appointed "all the members of the bar" for purposes of arraignment. The Supreme Court observed that "whether they would represent the defendants thereafter if no counsel appeared on their behalf, was a matter of speculation only, or, as the judge indicated, of mere anticipation on the part of the court." *Powell*, 287 U.S. at 56.  On the day of trial, a lawyer from Tennessee appeared on behalf of "persons interested in the defendants," but  stated

13

that he had not had an opportunity to prepare the case or familiarize himself with local procedure, and was unwilling to represent the defendants on such short notice. After an informal colloquy, the trial court decided that the Tennessee lawyer would represent the defendants "with whatever help the local bar could provide." The Supreme Court held that the defendants were effectively denied the assistance of counsel. Nothing resembling those circumstances exists in the present case, nor has Burell shown "attorney abandonment." *See Maples v. Thomas*, 565 U.S. 266, 281, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012). His claim on this point is without merit.

2. The State Habeas Petitions

Burell also filed five state habeas corpus petitions challenging the convictions at issue in this case. The first of these, cause no. WR-60,418-02, was signed on October 17, 2016, which is 326 days after his conviction became final, leaving 39 days in the federal limitations period. This petition was dismissed without written order on February 1, 2017, after the Court of Criminal Appeals received a motion to dismiss, purportedly from Burell but which Burell says was fraudulently submitted by another inmate.

Burell's second and third state habeas petitions, cause no.'s WR-60,418-03 and 04, (challenging his two counts of conviction) were signed on January 9, 2017, prior to the dismissal of his first petition. On April 5, 2017, cause no. WR-60,418-03 was dismissed as non-compliant, and cause no. WR-60,418-04 was remanded to the trial court for findings of fact and conclusions of law. *See* docket no. 9-8, p. 1 (dismissing cause no. WR-60,418-03) and docket no. 9-27, p. 1 (remanding cause no. WR-60,418-04).

On April 24, 2017, Burell filed a supplemental writ application in the district court. (Docket no. 9-17). However, this supplemental writ application was not on the standard habeas form required by Rule 73.1 of the Texas Rules of Appellate Procedure. This rendered the entire habeas application non-compliant, and the Texas Court of Criminal Appeals dismissed it on March 7, 2018. *See* docket no. 9-11, p. 1.

14

The petition numbered WR-60,418-05 appears to have been signed on October 17, 2016 (docket no. 31, p. 13) and was dismissed without written order on April 5, 2017. A motion to dismiss purportedly filed by Burell on March 14, 2017, says that the writ was submitted in October of 2016 and he does not know why the trial court has just now filed it.

Burell's fifth petition challenging his conviction, cause no. WR-60,418-06, was signed on February 28, 2019. (Docket no. 9-34, p. 18). This petition was denied without written order on May 15, 2019. Burell signed his federal habeas petition on May 31, 2019.

The two petitions which were dismissed as non-compliant, WR-60,418-03 and -04, do not toll the limitations period because they were not properly filed under 28 U.S.C. §2244(d)(2). *Jones v. Lumpkin*, 22 F.4th 486, 490 (5th Cir. 2022), *citing Artuz v. Bennett*, 531 U.S. 4, 8, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000); *Caldwell v. Dretke*, 182 F.App'x 346 (5th Cir. 2006). Even if the two petitions which Burell says were improperly dismissed because another inmate filed a fraudulent motion to dismiss are considered to toll the limitations period, these were filed on October 17, 2016, and dismissed on February 1 and April 5, 2017. The latest of these dates, April 5, 2017, would extend Burell's limitations period only to Monday, May 15, 2017, over two years before he signed his federal habeas petition on May 31, 2019.

Burell's fifth state habeas petition, which was signed on February 28, 2019, did not extend the limitations period because this period had already expired. A state habeas petition filed after the limitations period expired does not revive any portion of that period. *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000); *Villegas v. Johnson*, 184 F.3d 467, 472 (5th Cir. 1999). While Burell asserts that he did not receive notice of the denial of this petition for several months, his limitations period had already expired when the petition was filed and so any late notice of the denial did not affect the statute of limitations. Thus, the tolling provisions of 28 U.S.C. §2244(d)(2) do not serve to bring Burell's petition within the federal limitations period.

3. Actual Innocence

Burell next contends that he is "actually innocent" because he was improperly convicted of two counts of aggravated assault on a correctional officer when he was only charged with one count of aggravated assault and one count of attempted aggravated assault. The Supreme Court has stated that actual innocence, if proven, can serve as an equitable exception to the limitations period in 28 U.S.C. §2244(d), allowing a gateway for a petitioner to present claims which would otherwise be barred. *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013); *Hancock v. Davis*, 906 F.3d 387, 389-90 (5th Cir. 2018). However, tenable actual-innocence gateway pleas are rare; a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. *Id.*, citing *Schlup v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (claim of actual innocence requires the petitioner to support his allegations of constitutional error with new reliable evidence, whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence which was not presented at trial); *see also House v. Bell*, 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met).

In applying the exception to the state procedural bar, the term "actual innocence" is defined as "factual" as opposed to "legal" innocence. Factual innocence means that the person did not commit the crime, while legal innocence arises when a constitutional violation by itself would require reversal. *Morris v. Dretke*, 90 F.App'x 62, 2004 U.S. App. LEXIS 183, 2004 WL 49095 (5th Cir., January 6, 2004), *citing Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). In *Morris*, the Fifth Circuit observed that "because Morris is not arguing that he was not the person who committed the crime, the actual innocence exception is not available to him." *See also Bousley v. United States*, 523 U.S. 614, 623-24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (actual innocence means factual innocence, not mere legal insufficiency).

16

In this case, Burell maintains that he is "actually innocent" of the conviction for aggravated assault of a correctional officer on Count II because he was not charged with aggravated assault, but rather with attempted aggravated assault. This is a claim of legal innocence rather than factual innocence, and as such does not trigger *McQuiggin*'s "actual innocence" exception to the statute of limitations. *Cf. Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000) (self-defense is a claim of legal rather than factual innocence); *Jackson v. Bryant*, civil action no. 17-385, 2018 U.S. Dist. LEXIS 160578, 2018 WL 4515886 (E.D. Okla., September 20, 2018) (claim that petitioner was not guilty of manslaughter but only negligent homicide is a claim of legal rather than factual innocence), *appeal dismissed by denial of certificate of appealability* 745 F.App'x 88, 2018 U.S. App. LEXIS 34629, 2018 WL 6444006 (10th Cir. 2018).

In *Malone v. Stephens*, civil action no. 4:13cv723, 2013 U.S. Dist. LEXIS 180754, 2013 WL 6840084 (N.D.Tex., December 27, 2013), the petitioner asserted that he was actually innocent and could thereby evade the statute of limitations because the indictment charged him with committing a robbery on a date when he was actually confined in state jail. The Northern District of Texas held that "petitioner makes no showing of actual innocence but instead merely demonstrates a defect in the indictment. The fact that his attorney allegedly overlooked the indictment defect and that petitioner purportedly discovered the defect post-conviction does not constitute 'new evidence' potentially warranting habeas relief," *citing In re Anderson*, 396 F.3d 1336, 1338 (11th Cir. 2005). In the same way, the alleged defect in Burell's indictment does not amount to a claim of "actual innocence" sufficient to evade the statute of limitations.

Burell has not offered any exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence to demonstrate his factual innocence of the conviction in Count II. *Bosley v. Cain*, 409 F.3d 657, 664 (5th Cir. 2005) (burden of proving actual innocence so as to overcome a procedural default is on the petitioner); *McQuiggin*, 569 U.S. at 386. In the absence of any such evidence, his actual innocence claim cannot serve to toll the limitations period.

Burell's claim of actual innocence on Count II also founders on the shoals of the concurrent sentence doctrine. The Fifth Circuit has explained that if a prisoner is serving two or more concurrent sentences, and a reviewing court determines that one of the sentences is valid, the court may decline to review or consider the remaining sentences, so long as there are no adverse collateral consequences. *Williams v. Maggio*, 714 F.2d 554, 555 (5th Cir. 1983); *compare Imbler v. Oliver*, 397 F.2d 277, 278 (9th Cir. 1968) (petitioner serving concurrent sentences for various offenses could attack one of these sentences where the challenged sentence itself prevented his parole eligibility on his other convictions).

In *Williams*, the petitioner was serving concurrent 50-year sentences for aggravated burglary and attempted second-degree murder. Each of the sentences included a finding that the petitioner was a habitual felon. The petitioner complained that the convictions violated the Double Jeopardy Clause. The Fifth Circuit affirmed the district court's conclusion that the petition was barred by the concurrent sentence doctrine because the only relief available was the setting aside of one of the convictions, but the sentences were identical and there was no significant likelihood that the petitioner would suffer adverse collateral consequences from an unreviewed conviction.

Similarly, Burell is serving identical 30-year concurrent sentences for aggravated assault upon a correctional officer. While he claims actual innocence of one of these convictions, stating that he was only charged with attempted aggravated assault, he raises no such claim concerning the other conviction. He does not allege, nor does the record reveal, any likelihood of adverse effects from an unreviewed conviction; both convictions were for aggravated assault upon a correctional officer, were the same length, and carry the same restrictions upon parole and mandatory supervision. Even if Burell had a viable actual innocence claim on Count II, which he does not, the concurrent sentence doctrine forecloses him from using such a claim to evade the statute of limitations.

Burell further contends that he is "actually innocent" of the enhancement provisions in both Count I and Count II, because these provisions give the wrong date of finality for his previous aggravated robbery conviction. However, a claim of "actual innocence" of a sentencing enhancement is not a claim of actual innocence of the crime of conviction and thus is not the type of claim which can invoke the exception to the statute of limitations. *See generally In re Bradford*, 660 F.3rd 226, 230 (5th Cir. 2011); *Rounds v. United States*, slip op. no. 3:19cv2453, 2020 U.S. Dist. LEXIS 203308, 2020 WL 6370162 (N.D.Tex., August 20, 2020), *Report adopted at* 2020 U.S. Dist. LEXIS 201541, 2020 WL 6363881 (N.D.Tex., October 29, 2020) (stating that "actual innocence jurisprudence does not apply to habeas claims based on actual innocence of a sentence"), *citing United States v. Jones*, 758 F.3d 579, 587 (4th Cir. 2014) (declining to extend *McQuiggin* to claims of actual innocence of a sentence). Burell's claim on this point does not provide a basis for evading the statute of limitations.

4. Equitable Tolling

Nor has Burell shown any other basis upon which the statute of limitations may be equitably tolled. The Fifth Circuit has held that the district court has the power to equitably toll the limitations period in "extraordinary circumstances." *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998). In order to qualify for such equitable tolling, the petition must present "rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998). In making this determination, the Fifth Circuit has held that proceeding *pro se*, illiteracy, deafness, lack of legal training, and unfamiliarity with the legal process are insufficient reasons for equitable tolling of the statute of limitations. *Felder v. Johnson*, 204 F.3d 168, 173 (5th Cir. 2000); *see also Fisher v. Johnson*, 174 F.3d 710, 713 n.11 (5th Cir. 1999).

The Supreme Court has stated that equitable tolling applies in federal habeas corpus challenges to state convictions, but that a petitioner may be entitled to such tolling only if he shows that he has been pursuing his rights diligently and that some extraordinary circumstance stood in his

way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010).

Equitable tolling cannot be used to thwart the intent of Congress in enacting the limitations period. *See Davis*, 158 F.3d at 811 (noting that "rare and exceptional circumstances" are required). At the same time, the Court is aware that dismissal of a first federal habeas petition is a "particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty." *Lonchar v. Thomas*, 517 U.S. 314, 324, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996).

The Fifth Circuit has explained that equitable tolling is not intended for those who "sleep on their rights." *Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999). This comports with the Supreme Court's holding that "reasonable diligence" is required for entitlement to equitable tolling. *Holland*, 560 U.S. at 649; *see also Palacios v. Stephens*, 723 F.3d 600, 604 (5th Cir. 2013).

Burell has not shown the exceptional circumstances required for equitable tolling of the statute of limitations. He let almost 11 months lapse before raising his first challenge to his conviction through the state habeas corpus procedure. After the Texas Court of Criminal Appeals ordered the trial court to make findings of fact and conclusions of law in Burell's third state habeas petition, he rendered that petition non-compliant under Texas law by filing a supplemental application without using the required form, in violation of Tex. R. App. P. 73.1. After this petition was dismissed as non-compliant, another 11 months passed before Burell filed his fifth state habeas petition, which was the first to be adjudicated on the merits. These gaps in time do not bespeak reasonable diligence. Burell's petition is barred by the statute of limitations.

<u>Certificate of Appealability</u>

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. §2253(c)(1)(A). A district court may deny a certificate of appealability *sua sponte* because the district court that denies a petitioner relief is in the best position to determine whether the petitioner

has made a substantial showing of a denial of a constitutional right on the issues before that court. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

The prerequisite for a certificate of appealability is a substantial showing that the petitioner has been denied a federal right. *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996). A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

The Supreme Court has stated that when the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a certificate of appealability should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the prisoner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

In this case, reasonable jurists would not find it debatable whether the district court was correct in its procedural ruling that Burell's petition is barred by the statute of limitations. Consequently, Burell is not entitled to a certificate of appealability.

## RECOMMENDATION

It is accordingly recommended that the above-styled application for the writ of habeas corpus be dismissed with prejudice as barred by the statute of limitations. 28 U.S.C. §2244(d). It is further recommended that a certificate of appealability be denied *sua sponte*.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found.

An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

So ORDERED and SIGNED this 21st day of April, 2022.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE